```
              IN THE UNITED STATES DISTRICT COURT
             FOR THE NORTHERN DISTRICT OF GEORGIA
                         ROME DIVISION

CHAD TEMPLE,                    *
                                *
     Plaintiff,                 *    CIVIL ACTION FILE
                                *
vs.                             *    NO. _____
                                *
DAVID K. NELSON,                *    JURY TRIAL DEMANDED
JAMES A. PYLE, and the          *
CITY OF CALHOUN, GEORGIA,       *
                                *
     Defendants.                *
```

## **COMPLAINT FOR DAMAGES**

### NATURE OF THE CASE

1.

One day in January 2024, a City of Calhoun police officer swore out nearly 400 arrest warrants for Chad Temple, accusing him of stealing money from a local church. These accusations were and are demonstrably false. Even though Mr. Temple did not steal a thing from the church, he was arrested and spent nearly two months in jail for the accusations. During that time, the City's police chief conveyed to a local news reporter that Mr. Temple and his wife had in fact committed the crimes. That was slanderous. Mr. Temple seeks damages and attorney's fees.

### PARTIES

2.

Plaintiff Chad Temple ("Chad") is a resident of Gordon

County, Georgia, and is subject to the jurisdiction of this Court.

3.

Defendant David K. Nelson ("Lt. Nelson") was, at all times relevant to this complaint, employed as an investigator by the City of Calhoun police department and acted under color of state law. Lt. Nelson is sued in his individual capacity.

4.

Defendant James A. Pyle ("Chief Pyle") was, at all times relevant to this complaint, employed as the Chief of Police for the City of Calhoun police department and acted under color of state law. Chief Pyle is sued in his official and individual capacities.

5.

Defendant City of Calhoun ("the City") is a political subdivision of the State of Georgia, which has the capacity to sue and be sued.

VENUE

6.

All acts or omissions alleged in this complaint occurred in the Northern District of Georgia, where at least one defendants resides, and therefore venue is properly within this district under 28 U.S.C. § 1391(b)(2).

## JURISDICTION

7.

Jurisdiction for this suit is conferred in part by 42 U.S.C. § 1983, which provides in part:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory, or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

## FACTS

### Chad Temple

8.

Chad has lived in the City of Calhoun his entire life (39 years).

9.

In 2011, Chad started a residential construction business, Temple Renovations (a sole proprietorship), which he has operated ever since.  Other than a Facebook page, Temple Renovations does not advertise; the overwhelming majority of his clients are referral and return clients.

10.

Chad met Melanie Land in April 2021.  When they met, Melanie was working as the financial secretary at Belmont

Baptist Church ("the Church"). Chad did not attend the Church.

11.

Chad and Melanie married in January 2023.

12.

Chad has substantial ties to the City of Calhoun community, including his father's business (Temple Trailer Sales) and his cousins' lawn care, auto parts, cabinetry and construction businesses.

Belmont Baptist Church

13.

Around July 2022, after the Church performed a financial audit of its credit card usage, it contacted the City of Calhoun police department to report the suspected unauthorized use of its credit cards.

14.

Following the Church's report, the City's police department began an investigation which, according to Police Chief James Pyle, found that there was unauthorized use of the Church's credit cards.

15.

Chad has never used the Church's credit cards, let alone used the Church's credit cards to make an unauthorized transaction.

Chad's arrest and detention

16.

On January 30, 2024, Calhoun Police Department Lt. David Nelson prepared 398 affidavits in support of warrants to arrest Chad for the Church's credit card usage (the "Arrest Warrants").  The affidavits supporting the Arrest Warrants alleged principally two types of crime.

17.

Roughly half of Lt. Nelson's affidavits alleged that Chad had committed the felony "Financial Transaction Card Fraud" in violation of O.C.G.A. § 16-9-33.  For example, in his affidavit addressing a transaction for $261.33 involving Academy Sports (Warrant # 2024480583), Lt. Nelson swore <u>in full</u>:

> Personally came CPD LT D.K. Nelson #09, who on oath says that, to the best of affiant's knowledge and belief that CHAD LAMAR TEMPLE did, in the County and State aforesaid, commit the offense of 16-9-33, Felony, Financial Transaction Card Fraud TO WIT did willingly and knowingly Chad Lamar Temple did, with the intent to defraud, use for the purpose of obtaining money, goods, services, or anything else of value a financial transaction card belonging to the victim without the knowledge or consent of the victim between the dates of 08/27/2019 at 06:00 AM and 07/08/2022 at 11:00 PM, in Gordon County, Georgia; the place of occurrence of said offense being <u>academy sports $261.33</u> and against the laws of the State of Georgia.

(emphasis added).

18.

The other roughly half of Lt. Nelson's affidavits swore that Chad had committed the felony "Criminal Receipt of Goods" in violation of O.C.G.A. § 16-9-35. As an example, and using the same transaction at Academy Sports (Warrant # 2024480604) recited above, Lt. Nelson swore <u>in full</u>:

> Personally came CPD LT D.K. Nelson #09, who on oath says that, to the best of affiant's knowledge and belief that CHAD LAMAR TEMPLE did, in the County and State aforesaid, commit the offense of 16-9-35, Felony, Criminal Receipt of Goods TO WIT did willingly and knowingly Chad Lamar Temple did receive money, goods, services, or anything else of value obtained in violation of subsection (a) of Code Section 16-9-33 with the knowledge or belief that the same were obtained in violation of subsection (a) of code section 16-9-33. between the dates of 08/27/2019 at 06:00 AM and 07/08/2022 at 11:00 PM, in Gordon County, Georgia; the place of occurrence of said offense being <u>academy sports $261.33</u> and against the laws of the State of Georgia.

(emphasis added).

19.

In 396 of the 398 Arrest Warrants, each transaction described is assigned two crimes: one for § 16-9-35, and one for § 16-9-33. And for each type of crime, the affidavits are essentially identical except for the name of the business (e.g., Academy Sports, American Eagle Outfitters, Apple.com) and the amount of the transaction (e.g., $261.33, $805.73, $231.12).

20.

Two of the Arrest Warrants differ from the other 396 warrants, in that they do not contemplate isolated transactions. They are:

(a) <u>Warrant # 2024480609</u>. It alleges that Chad committed "the offense of 16-8-3, Felony, Theft by Deception" by "willingly and knowingly ... obtain[ing] property by any deceitful means or artful practice with the intention of depriving the owner of the property resulting in an overall theft of approximately $229,580.95. between the dates of 08/27/2019 at 06:00 AM and 07/08/2022...."

(b) <u>Warrant # 2024480610</u>. It alleges that Chad committed "the offense of 16-9-31, Felony, Financial Transaction Card Theft ... willingly and knowingly" when "[]he did take, obtain, or withhold a financial transaction card from the person, possession, custody, or control of another without the cardholder's consent; or who with the knowledge that it has been so taken, obtained, or withheld, receives the financial transaction card with intent to use it or to sell it or to transfer it to a person other than the issuer or the

cardholder between the dates of 08/27/2019 at 06:00 AM and 07/08/2022 at 11:00 PM in Gordon County, Georgia; the place of occurrence of said offense being Calhoun, Georgia $229,580.95 and against the laws of the State of Georgia."

21.

The Arrest Warrants cover credit card transactions occurring between August 2019 and July 2022.

22.

Most of the Arrest Warrants were signed by Gordon County Magistrate Judge Pat Rasbury, while the remaining were signed by Gordon County Magistrate Judge Tim Langston. All 398 warrants were signed on January 30, 2024.  The location of the crime that is listed on the Arrest Warrants varies, either in Gordon County or City of Calhoun.

23.

The day after Lt. Nelson swore out the Arrest Warrants, January 31, and pursuant to those warrants, Chad was arrested and booked in the Gordon County Jail on 398 felony charges.  (Chad's wife Melanie was also arrested that day and charged with the same offenses.)

24.

Several days later, on February 6, a story appeared on Fox 5 News (both on air and online) about Chad and Melanie,

where Chief Pyle is quoted as saying, "It's shocking to me that someone would steal from a church to begin with." See "Unholy crime: Couple charged with stealing from Calhoun church," Tyler Fingert (published February 6, 2024 5:09 pm EST).

25.

In discussing the arrests of Chad and Melanie in that interview, Chief Pyle told the Fox 5 reporter, "When someone's stealing from a church it ... uh ... does rock the community a bit. It's been big news."

26.

In discussing the arrests of Chad and Melanie in that interview, Chief Pyle told the Fox 5 reporter, "It started out small and it wasn't discovered, then another charge and another charge, then a little bigger and a little more frequent."

27.

Chad requested a preliminary hearing on his criminal charges. After that hearing (which was continued over two days), the magistrate court determined that probable cause to charge Chad with the 398 felony crimes was absent and dismissed the warrants.

28.

Chad was released from jail on March 28, having spent

57 days in custody.

29.

Lt. Nelson should have known that the Arrest Warrants -- all 398 of them -- failed to establish probable cause to arrest Chad.

30.

Before Chad was arrested on January 31, he was an in-demand residential contractor in the City of Calhoun. He had more construction business than he could handle, gladly limiting his work to the greater Calhoun area.

31.

Following Chad's arrest and the sensational news coverage of it (that Chad and his wife had stolen hundreds of thousands of dollars from the Church), Chad's business was annihilated and his reputation ruined.

<u>Count 1</u>

<u>42 U.S.C. § 1983: Malicious Prosecution</u>

<u>in violation of the Fourth Amendment</u>

(Defendant Lt. Nelson)

32.

The plaintiff incorporates paragraphs 1 through 31 here by this reference.

33.

Lt. Nelson initiated a criminal prosecution against

Chad for alleged violations of O.C.G.A. §§ 16-9-33 & 16-9-35, and he knew or should have known that no arguable probable cause existed to believe that Chad had committed these crimes (or any crime recognized by law).

34.

Lt. Nelson initiated the arrest and continued the prosecution of Chad by making false and reckless statements and material omissions in his arrest warrant applications, thus displaying malice and a reckless disregard for Chad's civil rights.

35.

This criminal prosecution terminated favorably for Chad.

36.

As a result of his arrest and prosecution, Chad has suffered, and continues to suffer, severe emotional, mental and financial injury, entitling him to recover compensatory and punitive damages against Lt. Nelson in an amount to be determined by the enlightened conscience of the jury.

<u>Count 2</u>

<u>42 U.S.C. § 1983: Stigma-Plus Due Process Injury</u>

<u>in violation of the Fourteenth Amendment</u>

(Defendants City and Chief Pyle)

37.

The plaintiff incorporates paragraphs 1 through 31 here by this reference.

38.

Chief Pyle, while discussing Chad's arrest and ongoing prosecution with a television news reporter, said:

- "It's shocking to me that someone would steal from a church to begin with."

- "When someone's stealing from a church it ... uh ... does rock the community a bit.  It's been big news."

- "It started out small and it wasn't discovered, then another charge and another charge, then a little bigger and a little more frequent."

39.

These statements were (and are) easily understood by any reasonable listener to impute criminal conduct to Chad.

40.

These statements were (and are) easily understood by any reasonable listener to be connected to Chad's arrest on January 31, 2024.

41.

Chief Pyle's defamatory statements occurred in connection with, and are reasonably related to, the arrest of Chad.  The public easily perceived the defamatory statements made by Chief Pyle to be connected to Chad's

arrest just days earlier.

42.

Chad's January 31 arrest by City was illegal, given that the Arrest Warrants did not show probable cause.

43.

Chief Pyle's defamatory statements were the proximate cause of severe damage to Chad's reputation in his community.

44.

Chief Pyle's defamatory statements were the proximate cause of the destruction of Temple Renovations, a business that Chad built from scratch and had operated profitably as a sole proprietorship since 2011.

45.

The catastrophic damage to Temple Renovation's reputation and goodwill flows directly from Chief Pyle's defamatory statements.

46.

In Georgia, goodwill is recognized as a type of intangible property interest. See, e.g., Nat. Assn. for the Advancement of Colored People v. Overstreet, 221 Ga. 16, 29 (1965)("It is uniformly recognized that good will is a species of property and constitutes a valuable asset of the business of which it is a part.").

47.

As the City's Chief of Police conducting a press interview, Chief Pyle was acting as a final policymaker in publishing these defamatory statements.

48.

Upon information and belief, Chief Pyle either (1) directed Lt. Nelson to obtain the Arrest Warrants, (2) tacitly approved Lt. Nelson's stated intent to obtain the Arrest Warrants, (3) ratified Lt. Nelson's decision to apply for the Arrest Warrants, or (4) otherwise participated in the procurement of the Arrest Warrants and Chad's arrest.

49.

Because the defamation alleged here occurred in connection with Chad's arrest and (actually caused) the destruction of Chad's business, the injury to Chad's personal and business reputations constitutes the deprivation of a liberty interest.  As a result, Chad suffered, and continues to suffer, severe emotional, mental and financial injury, entitling him to recover compensatory damages against these defendants in an amount to be determined by the enlightened conscience of the jury.

### Count 3
### O.C.G.A. § 51-5-4: Slander Per Se
(Defendant Chief Pyle)

50.

The plaintiff incorporates paragraphs 1 through 31 here by this reference.

51.

Chief Pyle, in discussing Chad's arrest and ongoing prosecution with a television news reporter, said:

- "It's shocking to me that someone would steal from a church to begin with."

- "When someone's stealing from a church it ... uh ... does rock the community a bit. It's been big news."

- "It started out small and it wasn't discovered, then another charge and another charge, then a little bigger and a little more frequent."

52.

These statements -- which are easily understood by any reasonable listener to impute criminal conduct to Chad -- have negatively impacted Chad's reputation both in his personal life and his business.

53.

Chief Pyle made these defamatory statements maliciously and with the specific intent to do harm to Chad for questionable and illegal acts.

54.

Chief Pyle's actions demonstrate willful misconduct, malice, wantonness, oppression and want of caring raising

the presumption of conscious indifference to the consequences of his actions, entitling Chad to punitive damages under O.C.G.A. § 51-12-5.1.

Count 4

Municipal Liability - Law Enforcement Activity

(Defendant City)

55.

The plaintiff incorporates paragraphs 1 through 31 here by this reference.

56.

This Count is alleged against the City of Calhoun.

57.

Chad timely provided ante litem notice to the City.

58.

The City has purchased liability insurance from Travelers Indemnity Company that provides coverage and indemnification for liability arising from law enforcement operations, including errors and omissions. That policy was in effect at all times relevant to this complaint.

59.

The purchase of liability insurance constitutes a limited waiver of sovereign immunity by the City of Calhoun.

60.

During the course of his employment and while

fulfilling their official duties, Lt. Nelson and Chief Pyle were reckless in accusing Chad of a crime.

61.

The City is liable for the tortious actions of these individual defendants under the doctrine of respondeat superior for violations of state and federal law. Under that doctrine, the City is not entitled to present a defense of official immunity.

### Count 5

### O.C.G.A. § 13-6-11: Attorney's Fees

(Defendants City and Chief Pyle)

62.

The plaintiff incorporates paragraphs 1 through 31 here by this reference.

63.

By the acts and omissions specified above, as well as other conduct, the defendants have acted in bad faith, been stubbornly litigious and caused Chad unnecessary trouble and expense.

64.

As a result of the defendants' actions, Chad is entitled to recover his actual expenses of litigation, including attorney's fees, from the defendants.

WHEREFORE, Chad respectfully requests the following relief:

(a) That as to Counts 1, 2 and 3, the Court award him compensatory and punitive damages against the appropriate individual defendant in an amount to be determined by the enlightened conscience of an impartial jury;

(b) That as to Count 2, 3 and 4, the Court award him compensatory damages against the City in an amount to be determined by the enlightened conscience of an impartial jury;

(c) That the Court grant Chad his reasonable costs and attorney's fees in bringing this action in an amount to be determined at trial;

(d) That Chad be granted a trial by jury on all issues so triable; and

(e) That Chad be granted such other and further relief as this Court deems just and proper.

Respectfully submitted,

BY: /s/ Cary S. Wiggins
Cary S. Wiggins
Ga. Bar No. 757657

WIGGINS LAW GROUP, LLC
Suite 804
260 Peachtree Street, NW
Atlanta, Georgia 30303
Telephone: (404) 659-2880
cary@wigginslawgroup.com