UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | |
|---|---|
| CHAD TEMPLE,<br><br>    Plaintiff,<br><br>v.<br><br>DAVID K. NELSON *et al.*,<br><br>    Defendants. | CIVIL ACTION FILE NO:<br><br>4:25-cv-00076-WMR |

## ORDER

This matter is before the Court on Defendants Chief James A. Pyle ("Chief Pyle") and the City of Calhoun, Georgia's ("the City") Motion to Dismiss. [Doc. 24].

### I.  BACKGROUND

The following facts are derived from Plaintiff's Amended Complaint. [Doc. 15]. Plaintiff met Melanie Land, the financial secretary for Belmont Baptist Church, in April 2021. [*Id.* ¶ 10]. The two married in January 2023. [*Id.* ¶ 11].

During 2022, "the City's police department began an investigation which, according to [Chief Pyle] found that there was unauthorized use of the Church's credit cards." [*Id.* ¶ 14]. On January 30, 2024, Defendant Lt. David K. Nelson sought warrants for the couple's arrest based on that investigation. [*Id.* ¶ 16]. Superior Court

1

Judges in Gordon County issued almost 400 warrants against the couple for violations of various state laws allegedly occurring from August 2019 until July 2022. [*Id*. ¶¶ 16–18, 22]. Plaintiff and Ms. Land were arrested on January 31, 2024. [*Id*. ¶ 23].

Around February 6, 2024, Chief Pyle participated in an interview with Fox 5 News. [*Id*. ¶ 24]. In that interview, Chief Pyle stated, "[i]t's shocking to me that someone would steal from the church to begin with." [*Id*. ¶ 24]. He also stated that "[w]hen someone's stealing from a church it . . . uh . . . does rock the community a bit. It's been big news" and "[i]t started out small and it wasn't discovered, then another charge and another charge, then a little bigger and a little more frequent." [*Id*. ¶¶ 25–26].

Later, a Magistrate Judge "determined that probable cause to charge [Plaintiff] . . . was absent and dismissed the warrants." [*Id*. ¶ 27]. Plaintiff was released from custody on March 28, 2024. [*Id*. ¶ 28].

Plaintiff filed this lawsuit on April 3, 2025. [Doc. 1]. In his Amended Complaint, he challenges both his arrest and Chief Pyle's statements to Fox 5 News. [Doc. 15]. Defendants the City and Chief Pyle filed a Motion to Dismiss. [Doc. 24]. The Court conducted a hearing on that motion on October 1, 2025.

## II.   LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face" and that rises above a speculative level. *Chandler v. Sec'y of Fla. Dep't of Transp.*, 695 F.3d 1194, 1199 (11th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The complaint must have enough facts to plausibly allege the required elements of a cause of action. *See Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295–96 (11th Cir. 2007). These facts, accepted as true at the pleading stage, must allow the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Conclusory allegations and legal conclusions "masquerading as facts" will not prevent dismissal. *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002); *see also Iqbal*, 556 U.S. at 678 (noting that "naked assertions devoid of further factual enhancement" are insufficient.) "[A] plaintiff armed with nothing more than conclusions" cannot "unlock the doors of discovery." *Iqbal*, 556 U.S. at 678–79. Additionally, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678.

## III. DISCUSSION

### A. Claims Against the City

Plaintiff asserts multiple claims against the City including, Count II Municipal Liability; Count III Stigma-Plus Due Process Injury in Violation of the Fourteenth Amendment; Count V Municipal Liability – Law Enforcement Activity; and Count VI Attorneys' Fees. *See* [Doc. 15 at 11, 13, 17, 19].

#### 1. Count II: Municipal Liability

Plaintiff alleges 42 U.S.C. § 1983 municipal liability against the City under a theory of ratification. [*Id*. at 11].

To subject a municipality to liability pursuant to § 1983, a Plaintiff must meet the requirements set out in *Monell v. Department of Social Services*, 436 U.S. 658 (1978). These include: "(1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *Underwood v. City of Bessemer*, 11 F.4th 1317, 1333 (11th Cir 2021) (citation omitted). "[T]he plaintiff must demonstrate [that] the municipality's policy or custom was the 'moving force' behind the alleged constitutional violation." *Id.*; *see also Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998) ("It is only when the execution of the government's policy or custom inflicts the injury that the municipality may be held liable under § 1983.") (citation and punctuation omitted).

4

Additionally, "a municipality can be held liable 'on the basis of ratification when a subordinate public official makes an unconstitutional decision and when that decision is then adopted by someone who does have final policymaking authority.'" *Hoefling v. City of Miami*, 811 F.3d 1271, 1279 (11th Cir. 2016) (citing *Matthews v. Columbia Cnty.*, 294 F.3d 1294, 1297 (11th Cir. 2002)). However, that "final policymaker . . . must ratify not only the decision itself, but also the unconstitutional basis for it." *Matthews*, 294 F.3d at 1297 (citing *Gattis v. Brice*, 136 F.3d 724, 727 (11th Cir. 1998)).

Plaintiff alleges that Chief Pyle acts as "the City's final policy maker[1] on law enforcement matters[.]" [Doc. 15 ¶ 38]. He asserts that Chief Pyle's duties included investigations and arrests, and that Chief Pyle was "personally involved" in the investigation against Plaintiff. [*Id.* ¶¶ 38–39]. Plaintiff attempts to support his ratification claim by alleging, "Chief Pyle endorsed or ratified Lt. Nelsons's unconstitutional" arrest of Plaintiff, "as well as the basis and method for that arrest[.]" [*Id.* ¶ 40]. He points to Chief Pyle's statements to Fox 5 News and argues that because the police department is "in a small-town" and this case is "big news," one can plausibly infer that Chief Pyle oversaw and approved Lt. Nelson's investigation. [Doc. 28 ¶¶ 9–10]. However, allegations, to survive a motion to

---

[1] For the purposes of this motion, the Court operates under the assumption that Chief Pyle is the final policymaker because, as the Chief of Police, it is plausible that Chief Pyle makes final policy decisions at least at some level.

5

dismiss must rise above mere speculation. *See Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level . . ."). Beyond Plaintiff's conclusory remarks that Chief Pyle was "involved" in the investigation, there are no factual allegations to show that Chief Pyle ever reviewed any of the allegedly defective arrest warrants obtained by Lt. Nelson. There are also no allegations that Chief Pyle somehow participated in the preparation of the contents of the arrest warrants. Therefore, except for Chief Pyle's statements to the press, Plaintiff does not allege anything else to support a finding of Chief Pyle's ratification of Lt. Nelson's allegedly unconstitutional decisions. These statements are too speculative and are not enough to show ratification.

Next, Plaintiff relies on Chief Pyle's statements to Fox 5 News to show Chief Pyle's familiarity with the case, which Plaintiff asserts constitutes Chief Pyle's ratification of Lt. Nelson's allegedly unconstitutional acts. However, this allegation does not save Plaintiff's claim. While such statements do show Chief's knowledge of the arrest, it does not show that he knew that the arrest was without probable cause. Further, it does not offer proof that he had knowledge of Lt. Nelson's alleged unconstitutional motive. Because Plaintiff fails to allege facts showing that Chief Pyle affirmatively reviewed, adopted, or ratified Lt. Nelson's allegedly unconstitutional basis for his actions, Plaintiff's *Monell* claim against the City fails.

### 2. Count III: Stigma-Plus Due Process Injury in Violation of the Fourteenth Amendment

Plaintiff alleges a claim against the Chief and the City for stigma-plus due process violation due to Chief Pyle's actions. [Doc. 15 at 13]. Specifically, Plaintiff asserts that "Chief Pyle is the City's final policy maker on law enforcement matters[,]" and when he spoke to the news reporter these statements "were (and are) easily understood by a reasonable listener to impute criminal conduct to [Plaintiff]." [*Id*. ¶¶ 43–47]. Plaintiff claims that these allegedly "defamatory statements" proximately caused "severe damage to [Plaintiff's] reputation in his community[,]" which allegedly caused damage to his construction business. [*Id*. ¶¶ 50–57].

Typically, tort claims do "not give rise to a § 1983 due process claim unless there is an additional constitutional injury alleged." *Rehberg v. Paulk*, 611 F.3d 828, 851 (11th Cir. 2010) (citing *Cypress Ins. Co. v. Clark*, 144 F.3d 1435, 1438 (11th Cir. 1998)). "Damage to reputation alone is insufficient to state a Fourteenth Amendment due process claim." *Id*. at 852 (citing *Cypress*, 144 F.3d at 1437–38). "Damages to a plaintiff's reputation 'are only recoverable in a section 1983 action if those damages were incurred as a result of government action significantly altering the plaintiff's constitutionally recognized legal rights.'" *Id*. at 851–52.

This is known as "stigma-plus." *Id*. at 852. A "stigma plus" claim requires that "the plaintiff show both a valid defamation claim (the stigma) *and* 'the violation of some more tangible interest' (the plus). *Id*. (citing *Behrens v. Regier*, 422 F.3d

7

1255, 1260 (11th Cir. 2005)). "The 'stigma-plus' test requires not only allegations stating a common-law defamation claim, but also an additional constitutional injury, tied to a previously recognized constitutional property or liberty interest, flowing from defamation." *Id*. (citing *Cypress*, 144 F.3d at 1436–37).

So, to be successful on this claim, Plaintiff must show both a valid defamation claim (the stigma), and either a damage to his liberty or property interest (the plus). Plaintiff's claim fails due to his inability to establish the "plus" requirement. Plaintiff's arrest cannot serve as the basis for the "plus" because Plaintiff's arrest happened before Chief Pyle's statements. There is no way that Chief Pyle's statements could have caused Plaintiff's arrest. Since the Plaintiff's injury does not "flow from" the alleged defamation, Plaintiff cannot use his arrest to satisfy the "plus" requirement. *Id*.

Plaintiff also cannot use the damage to his business reputation and goodwill as the "plus" requirement. Plaintiff claims that because of Chief Pyle's statements, he has lost "virtually all" of his "current and prospective contracts, credit relationships, and the ability to continue lawful operations as a sole proprietorship." [Doc. 15 ¶ 51]. He states that this damage to his business's "reputation and goodwill flows directly from Chief Pyle's defamatory statements." [*Id*. ¶ 52].

Plaintiff cites *Little v. City of N. Miami*, 805 F.2d 962 (11th Cir. 1986), to support his claim that damage to business reputation can support the "plus"

8

requirement. In *Little*, the Eleventh Circuit found that an attorney had "sufficiently alleged injury to his business reputation" where a city "without affording appellant notice or a hearing, passed a resolution which has 'embarrassed [appellant] in his personal life' and '[degraded] him in his employment.'" *Id*. at 969.

Plaintiff's reliance on *Little* fails. In that case, the Eleventh Circuit used a procedural due process analysis to find that the appellant satisfied the "plus" requirement in a "stigma plus" claim. *Id*. Specifically, it noted the lack of "notice or a hearing" in passing a resolution that allegedly defamed the appellant. *Id*. Here, Plaintiff has not plead a procedural due process claim. In fact, in *Cypress*, the Eleventh Circuit stated, "although injury to business reputation may be relevant to damages in a section 1983 action, these damages would only be available in a case involving the deprivation of a more tangible liberty or property right" through "procedural due process." 144 F.3d at 1436–37. Plaintiff alleges no such procedural deprivation here. Rather, he asserts substantive due process rights of "goodwill" and "reputation." That is not enough to survive Defendants' Motion to Dismiss, such that his claim for stigma-plus against the City is due to be dismissed.

### 3. Count V: Municipal Liability – Law Enforcement Activity

Plaintiff alleges that the City is liable for "law enforcement activity" because "[t]he City has purchased liability insurance from Travelers Indemnity Company

9

that provides coverage and indemnification for liability arising from law enforcement operations, including errors and omissions." [Doc. 15 ¶ 66].

To bring a claim against the City under state law, Plaintiff must illustrate a waiver of the City's sovereign immunity. *See* O.C.G.A. § 36-33-1(a) ("[I]t is the public policy of the State of Georgia that there is no waiver of the sovereign immunity of municipal corporations of the state and such municipal corporations shall be immune from liability for damages."). However, Georgia's sovereign immunity statute has exceptions. Under O.C.G.A. § 36-33-1(a) "[a] municipal corporation shall not waive its immunity by the purchase of liability insurance … unless the policy of insurance covers an occurrence for which the defense of sovereign immunity is available, and then only to the extent of the limits of such insurance policy."

Plaintiff asserts that "[t]he purchase of liability insurance constitutes a limited waiver of sovereign immunity by the City of Calhoun." [Doc. 15 ¶ 67]. However, Defendants have shown a copy of an endorsement[2] to the policy which stated that the insurance only applied to claims for which the City would otherwise not be entitled to a defense of governmental immunity. [Doc. 24-1 at 24]. It specifically

---

[2] The Court may consider this portion of the City's insurance policy because the policy is incorporated by reference in the complaint and is central to Plaintiff's claims. *See Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002) (a document attached to a motion to dismiss may be considered by the court without converting the motion into one for summary judgment only if the attached document is: (1) central to plaintiff's claim; and (2) undisputed.").

10

stated that it did not waive the City's governmental immunity under O.C.G.A. § 36-33-1(a). [*Id.*]. Plaintiff himself acknowledges that "controlling cases . . . foreclose[] [Plaintiff's] argument that the purchase of insurance waives sovereign immunity[.]" [Doc. 28 at 18]. Therefore, Plaintiff's state law claims against the City are due to be dismissed.

### 4. Count VI: Attorneys' Fees

Plaintiff also seeks attorneys' fees pursuant to O.C.G.A. § 13-6-11 against the City. Under that statute, a plaintiff may recover attorneys' fees "where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense[.]" *Id.* However, an award under this section requires a valid underlying claim. *See Gilmour v. Gates, McDonald and Co.*, 382 F.3d 1312, 1316 (11th Cir. 2004) (holding that O.C.G.A. § 13-6-11 "requires an underlying claim."). Accordingly, Plaintiff's claim for attorneys' fees and litigation costs is also dismissed.

### B. Claims Against Chief Pyle

Plaintiff asserts multiple claims against Chief Pyle, including Count III Stigma-Plus Due Process Injury in Violation of the Fourteenth Amendment; Count IV Slander Per Se; and Count VI Attorneys' Fees. [Doc. 15 at 13, 16, 19].

### 1. Count III: Stigma-Plus Due Process Injury in Violation of the Fourteenth Amendment

As laid out earlier, Plaintiff alleges a 42 U.S.C. § 1983 claim for stigma-plus defamation through Chief Pyle's actions against both the City and Chief Pyle. [Doc. 15 at 13]. Specifically, Plaintiff asserts that "Chief Pyle is the City's final policy maker on law enforcement matters[,]" and when he spoke to the news reporter these statements "were (and are) easily understood by a reasonable listener to impute criminal conduct to [Plaintiff]." [*Id.* ¶¶ 43–47]. He claims that these allegedly "defamatory statements" proximately caused "severe damage to [Plaintiff's] reputation in his community[,]" which allegedly caused damage to his construction business. [*Id.* ¶¶ 50–57].

Operating under the assumption that Plaintiff asserts the "stigma plus" claim against Chief Pyle in his individual capacity, Plaintiff's claim fails against Chief Pyle for the same reasons it failed against the City laid out above.[3] Specifically,

---

[3] While "[p]laintiffs are not usually required to designate, with particular words in the pleadings, that they bring their action against defendants in the defendants' individual or official capacities, or both." *Hobbs v. Roberts*, 999 F.2d 1526, 1529-30 (11th Cir. 1993). When a complaint does not identify "in which capacity the defendants are sued, the course of proceedings typically indicates the nature of the liability sought to be imposed." *Jackson v. Georgia Dept. of Transp.*, 16 F.3d 1573, 1575 (11th Cir. 1994) (citing *Kentucky v. Graham*, 473 U.S. 159, 167 n. 14 (1985)). Here, the "course of the pleadings" would indicate that Plaintiff only intends to bring this (and the other claims against Chief Pyle) against Chief Pyle in his official capacity on this claim. This is based on Defendants' continued briefing of Chief Pyle's defenses on his individual capacity claims and Plaintiffs non-responsiveness to those defenses. Therefore, it is reasonable to assume that Plaintiff only wishes to sue Chief Pyle in his official capacity. However, the Court addresses Chief Pyle's individual capacity in its analysis of Plaintiff's slander per se claim below.

because Plaintiff fails to properly plead the "plus" requirement in his "stigma-plus" claim.

Further, even if Plaintiff did succeed on his "stigma-plus" claim against the City, which he did not, Chief Pyle is entitled to official immunity for the same reasons discussed herein related to Plaintiff's "slander per se" claim against Chief Pyle. Plaintiff challenges the same statements in both claims and cannot establish the necessary charge of defamation against Chief Pyle due to his entitlement to official immunity. Therefore, Plaintiff's claim against Chief Pyle for "stigma plus" also fails.[4]

### 2. Count IV: Slander Per Se

Next, Plaintiff alleges that Chief Pyle's various statements[5] to Fox 5 News constitute slander per se under O.C.G.A. § 51-5-4. [Doc. 15 at 16]. Plaintiff alleges Chief Pyle's statements "are easily understood by any reasonable listener to impute criminal conduct to [Plaintiff] -- have negatively impacted [Plaintiff's] reputation both in his personal life and his business." [*Id*. ¶ 60]. Further, he asserts that Chief

---

[4] However, the Court notes that it will dismiss this count (along with all other counts brought against Chief Pyle) without prejudice so that Plaintiff may refile later if he discovers evidence that could support a claim under any of his theories.

[5] As a reminder, Chief Pyle's statements were as follows: "It's shocking to me that someone would steal from the church to begin with[:]" "When someone's stealing from a church it . . . uh . . . does rock the community a bit. It's been big news[;]" and "It started out small and it wasn't discovered, then another charge and another charge, then a little bigger and a little more frequent." [*Id*. ¶¶ 24–26].

Pyle made these statements "maliciously and with the specific intent to do harm to [Plaintiff][.]" [*Id.* ¶ 61].

Slander per se includes "[i]mputing to another a crime punishable by law[.]" O.C.G.A. § 51-5-4(a)(1). Plaintiff claims that Chief Pyle's statements to Fox 5 News accused him of the crime of theft by deception under O.C.G.A. § 16-8-3(a). Therefore, Plaintiff has plead the basic requirement of slander per se under Georgia state law.

However, to continue past this motion, Plaintiff must overcome official immunity. "Official immunity protects individual public agents from personal liability for discretionary actions taken within the scope of their official authority, and done without willfulness, malice, or corruption." *Everson v. Deklab Cnty. Sch. Dist.*, 344 Ga.App. 665, 667 (2018). "'[D]iscretionary' acts are only subject to suit when performed with actual malice or intent to cause injury." *Mommies Props. LLC v. Semanson,* 366 Ga.App. 153, 159 (2022). "Actual malice, in the context of official immunity, means a deliberate intention to commit a wrongful or illegal act." *Tittle v. Corso*, 256 Ga.App. 859, 862 (2002). Discretionary acts include acts that call for a public official's judgment without specific direction. *Smith v. Bulloch Cnty. Bd. of Comm'rs*, 261 Ga.App. 667, 669 (2003).

Chief Pyle's statements to Fox 5 News were discretionary acts. Here, Chief Pyle spoke to Fox 5 News about an ongoing public safety issue. This act was

discretionary because based on all information available to the Court, no there is no person directed Chief Pyle to make those statements. Rather, he used personal judgment in examining the facts. *See Carter v. Glenn*, 249 Ga.App. 414, 416 (2001). Therefore, Chief Pyle is entitled to official immunity from liability for Plaintiff's slander per se claim.

Plaintiff argues that "Chief Pyle's actions demonstrate willful misconduct, malice, wantonness, oppression and want of caring raising the presumption of conscious indifference to the consequences of his actions, entitling Chad to punitive damages under O.C.G.A. § 51-12-5.1." [Doc. 15 ¶ 62]. These threadbare allegations are not enough to survive this motion to dismiss. Plaintiff alleges no facts to raise an inference of any kind of ill intent on the part of Chief Pyle, even construing all inferences in Plaintiff's favor. Therefore, Plaintiff's claim against Chief Pyle for slander per se is dismissed.

### 3. Count VI: Attorneys' Fees

Finally, Plaintiff has also moved for attorneys' fees under O.C.G.A. § 13-6-11 against the Chief Pyle. Under that statute, a plaintiff may recover attorneys' fees "where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense[.]" [*Id.*]. However, an award under this section requires a valid underlying claim. *See Gilmour v. Gates, McDonald and Co.*, 382 F.3d 1312, 1316 (11th Cir. 2004) (holding that O.C.G.A. §

13-6-11 "requires an underlying claim."). Accordingly, Plaintiff's claim for attorneys' fees and litigation costs is also dismissed.

## IV. CONCLUSION

Defendants' Motion to Dismiss [Doc. 24]. Accordingly, claims against the City of Calhoun, Georgia are **DISMISSED**. All claims against Chief Pyle are **DISMISSED WITHOUT PREJUDICE**.

This 15th day of December, 2025.

_____
WILLIAM M. RAY, II
UNITED STATES DISTRICT JUDGE